DALLMANN, Appellant, vs. DALLMANN, Respondent.

*October 7, 1914—February 9, 1915.*

*Statutes: Construction: Repeal: Amendment: Retroactive effect: Divorce: Interlocutory judgment: Remarriage before final judgment: Validity.*

1. A later statute which amends a former statute to read as in the later statute indicated continues in force all the provisions of the former statute found in the later one.
2. An amendatory statute will not be construed as retroactive or as applying to prior facts or transactions, or to pending proceedings, unless a contrary intention is expressly stated or necessarily implied.
3. An interlocutory judgment of divorce entered pursuant to ch. 323, Laws of 1909 (sec. 2360*k*), upon which final judgment could not

Dallmann v. Dallmann, 159 Wis. 480.

be entered before the expiration of one year from its date, was not so affected by the subsequent enactment of ch. 239, Laws of 1911, that it thereby became a final decree; it being plainly the legislative intent that interlocutory judgments entered pursuant to the statute of 1909 must proceed to completion by final judgment under that statute. [Whether the legislature could make final a decree which was theretofore interlocutory only, is not decided.]

4. Nor was the restriction on remarriage contained in the act of 1909 (whereby it was made unlawful for any party to the action to marry again until the final judgment was entered) repealed or abrogated by the act of 1911, which forbade such remarriage until the end of one year from the final judgment.

5. When, therefore, a party to an action in which the interlocutory judgment of divorce was entered before the enactment of the statute of 1911, married again before entry of the final judgment, such marriage was unlawful and might be annulled under sub. (3), sec. 2351, Stats.

APPEAL from an order of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Reversed.*

*James D. Foley,* for the appellant.

For the respondent there was a brief by *Rubin & Zabel,* attorneys, and *Sol. J. Weil,* of counsel, and oral argument by *Mr. Weil.*

The following opinion was filed October 27, 1914:

TIMLIN, J. The plaintiff brought this action for annulment of a marriage alleged to have taken place on February 13, 1912, in the city of Milwaukee. The defendant had on August 6, 1903, married one William Vielbaum at Milwaukee, and on July 28, 1910, began an action for divorce against the latter, in which action an interlocutory judgment of divorce was entered on October 28, 1910, and a final judgment thereon on March 11, 1913. A demurrer to the complaint was sustained, and from that ruling the plaintiff appeals.

By sub. (3) of sec. 2351, Stats., it is ground for annulment of a marriage that at the time of contracting the marriage the man had a wife living or the woman had a husband

living.   Prior to the enactment of ch. 323, Laws of 1909, the subject of divorce was regulated by ch. 109, secs. 2348 to 2376, Stats. 1898, which with the annotations and court rules found in that edition of the statutes gives a very fair general idea of the divorce laws of this state as then in force.   These last came to us in the infancy of our existence as a state from some of the older states and represented a vast amount of learning and experience on this subject, stretching back more than two centuries.   Ch. 323, Laws of 1909, attempted extensive innovations in these laws and repealed secs. 2349, 2350, 2351, 2353, 2354, 2355, 2359, and 2360; amended to read as there set forth secs. 2330, 2362, 2366, 2370, 2371, and 2373; and added nineteen new sections numbered and designated according to the curious style then and now prevailing, secs. 2351, 2353, 2354, 2355, 2360, 2360*f*, 2360*g*, 2360*h*, 2360*h*—1, 2360*h*—2, 2360*h*—3, 2360*h*—4, 2360*i*, 2360*j*, 2360*k*, 2360*l*, 2360*n*, 2360*r*, 2360*s*.   We are here concerned with sec. 2360*k*, which required, in all actions to affirm or annul a marriage, or for divorce, in which it was determined by verdict or findings that the marriage be annulled or the divorce granted, an interlocutory judgment which should fully determine the rights of the parties, provide for alimony and the maintenance of children, etc., and determine the status of the parties.   But the determination of status *should not be effective, except for the purpose of an appeal to review the same, until after one year from the date when such interlocutory decree was entered.*   One year was given from the date of the last revision or modification of such interlocutory judgment in which to appeal.   At the expiration of one year from the entry or from the last modification or revision of such interlocutory judgment, if it had not been reversed or modified on appeal, and if the court on its own motion, or on motion of either party, had not ordered otherwise, final judgment might be entered on said interlocutory judgment, and this judgment so entered should be final, conclusive,

and nonappealable, and subject to modification only with reference to alimony and the care and support of children.

Sub. 2 of said sec. 2330 read:

"It shall not be lawful for any person, who is a party to an action for divorce from the bonds of matrimony, in any court of this state, to marry again until the final judgment of divorce is entered; and the marriage of any such person solemnized before the entry of the final judgment of divorce shall be null and void."

By ch. 239, Laws of 1911, which went into effect June 5, 1911, secs. 2360k, 2360l, 2374, and sub. 3 of sec. 2330 of the said act of 1909 and sec. 3041 of the Statutes of 1898 were repealed.

Sub. 2 of sec. 2330 above quoted was amended to read:

"It shall not be lawful for any person, who is a party to an action for divorce from the bonds of matrimony, in any court in this state, to marry again until one year after judgment of divorce is entered, and the marriage of any such person solemnized before the expiration of one year from the date of the entry of judgment of divorce shall be null and void."

There was also by this act of 1911 added to the statutes two new sections numbered 2374 and 3041. The first of these provided that where a judgment of divorce from the bonds of matrimony is granted it shall not be effective, so far as it determines the status of the parties, except for the purpose of an appeal, for one year. During this year the court giving the same may vacate the judgment, which act shall restore the parties to their marital rights. The time of appeal from the judgment is limited to one year, from an order modifying or revising it to six months, and at the end of a year, no appeal having been taken and no modification or revision made, the judgment becomes final and conclusive without further proceedings. This act is in language and form of expression present and prospective and contains no retroactive words. It contains no saving or other clauses relating to

pending cases. There is no express repeal of sub. 2 of sec. 2330, Laws of 1909, above quoted, but it is amended so as to read as above quoted.

Counsel for respondent, looking at the case from the viewpoint of defendant's interest and beginning with the act of 1911, has convinced himself and seeks to convince this court that the interlocutory judgment of October 28, 1910, was so affected by the statute which went into force on June 5, 1911, that the interlocutory decree became thereby a final decree; or the restriction on remarriage contained in the act of 1909 was thereby abrogated. In order to obtain a correct view of the question so presented we must approach it also from the viewpoint of public interest and from the right end and ascertain the conditions existing upon which the amendment or repeal of 1911 operated. The defendant was married to Vielbaum in 1903 and in consequence of this could not contract another valid marriage while he was living unless divorced from him. Sec. 2330, sub. 1; sec. 2351, sub. (3). These statutes were in force all the time from 1903 and are now in force. So one aspect of the question must be whether the defendant was divorced from Vielbaum at the time of her marriage to plaintiff. Manifestly she was not unless the interlocutory decree entered on October 28, 1910, had that effect. It did not purport to have that effect and was not so intended, and, if that effect be given it, it must be by force of what the legislature did in 1911.

Grouping cognate provisions we have:

"Such judgment shall also determine the status of the parties to such action, but such determination of the status of the parties shall not be effective, except for the purposes of an appeal to review the same, until after one year from the date when such interlocutory decree was entered." Sub. 2, sec. 2360k (ch. 323, Laws of 1909).

"At the expiration of one year from the entry . . . the final judgment may be entered. . . .

"It shall not be lawful for any person who is a party to an

action for divorce . . . to marry again until the final judgment of divorce is entered." Sec. 2360*l* and sub. 2, sec. 2330.

It seems to be clear that under these statutes the defendant could only be relieved from the legal impediment created by her first marriage by a divorce which had the legal effect of removing the impediment. Such divorce she had not obtained at the time of the marriage in question. Under the law of 1909 a final judgment was required in order to have that effect. She would only be free to marry again after final judgment under that act. The statute of 1911 did not expressly purport to change the effect of this interlocutory decree or to make final what was theretofore interlocutory merely. Whether the legislature could do so is an interesting question not involved in this case.

We have in this state the usual constitutional division of governmental powers and in addition an express provision forbidding the legislature to grant divorces. Sec. 24, art. IV, Const.; *Wis. Tel. Co. v. Krueger,* 115 Wis. 150, 90 N. W. 458; *Sturgis v. Hull,* 48 Vt. 302; and Cooley, Const. Lim. (7th ed.) p. 127. That question does not arise here because the legislature has not attempted to make the interlocutory decree final. If any such effect could be given to the statute of 1911 it must be an incidental and unintended effect. Settled rules forbid giving to the language of amendatory statutes such effect. Authorities and cases *infra.* If, on the other hand, we seek to support the ruling below upon the argument that the legislative restriction against remarriage found in the statute of 1909 was repealed by the statute of 1911, we encounter insuperable difficulties.

In the first place, if such restriction were repealed this repeal would not alone give a right to marry to one who had a husband living from whom she was not divorced, because the statutes above referred to forbade such marriage. In the next place, the act of 1911 did not repeal the restriction contained in the act of 1909. It has long been the settled law

of this state that a later statute which amends a former stat-
ute to read as in the later statute indicated continues in force
all the provisions of the former statute found in the later
statute. This as said, in *Julien v. Model B., L. & I. Asso.*
116 Wis. 79, 90, 92 N. W. 561, is common law although em-
bodied, so far as relates to the revised statutes, in sec. 4985,
Stats. 1898.

In Black on Interpretation of Laws (2d ed.) sec. 168,
p. 579, the rule is stated as follows:

"Where an amendment is made by declaring that the origi-
nal statute 'shall be amended so as to read as follows,' retain-
ing part of the original statute and incorporating therein new
provisions, the effect is not to repeal, and then re-enact, the
part retained, but such part remains in force as from the time
of the original enactment, while the new provisions become
operative at the time the amendatory act goes into effect, and
all such portions of the original statute as are omitted from
the amendatory act are abrogated thereby and are thereafter
no part of the statute."

From Id. sec. 170, p. 584, may also be quoted:

"An amendatory statute, like other legislative acts, takes
effect only from its passage, and will not be construed as re-
troactive or as applying to prior facts or transactions, or to
pending proceedings, unless a contrary intention is expressly
stated or necessarily implied."

These rules are sustained by *Glentz v. State,* 38 Wis. 549,
554; *State v. Gumber,* 37 Wis. 298, 303; *Hurley v. Texas,*
20 Wis. 634; *State ex rel. Ohlenforst v. Beck,* 139 Wis. 37,
40, 119 N. W. 300; *Scheftels v. Tabert,* 46 Wis. 439, 446, 1
N. W. 156; *Laude v. C. & N. W. R. Co.* 33 Wis. 640, 643;
*Fullerton v. Spring,* 3 Wis. 667.

Under these authorities it cannot be said that the act of
1911 operates as a repeal upon the restriction against remar-
riage found in the act of 1909. On the contrary it continues
this restriction in force. It is true the restriction in the lat-
ter act runs from a different date or has a different beginning
and termination, but the restriction is enacted in the same

words, and there are no words of repeal and no indication that the legislature intended the law of 1911 should have any retroactive effect.

The defendant would only be free to marry again after final judgment, which could not be entered before the expiration of one year from the interlocutory judgment under the act of 1909; while under the act of 1911 she is only free to marry again at the end of one year from the final judgment. The complaint leaves her within the restriction of either statute. Neither of these things had occurred to remove the impediment of her former marriage at the time the marriage in question was contracted. One year had not elapsed from the time of the final decree and no final decree had been entered. If the act of 1911 could be taken to make the interlocutory decree final, still the marriage in question was contracted within one year from the time that act went into effect. In whatever way we look at this, the defendant was not divorced from her former husband at the time the marriage in question was contracted, nor was she within either statute at liberty to contract a valid marriage, but it appears quite plainly that the intention of the legislature was that the interlocutory judgments entered pursuant to the statute of 1909 must proceed to completion by final judgment under that statute. An exception cannot be made in favor of some particular judgment. No retroactive effect can be given to such a statute. *Ely v. Holton,* 15 N. Y. 595; 1 Lewis's Sutherland, Stat. Constr. (2d ed.) pp. 442, 443, and Wisconsin cases cited. They must all be affected alike, and the absence of retroactive words in the statute and the usual effect of continuing a part of a former statute in force by amending it with some additions or changes forbid any other construction of this act of 1911 so far as it relates to existing interlocutory judgments entered under the act of 1909.

*By the Court.*—The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.

The respondent moved for a rehearing for the purpose of having the decision provide that no costs shall be taxed in this court against the respondent.

The motion was denied, with $25 costs, on February 9, 1915.