STATE EX REL. LAYCOCK, Respondent, vs. NYGAARD, as County Clerk, etc., Appellant.

*October 11, 1927—March 6, 1928.*

*Taxation: Taxable gain on sale of real estate: Depreciation.*

In determining profits for the purpose of income tax assessment upon the sale of real estate, depreciation is to be deducted from the purchase price; but if the taxpayer has not taken

deductions for depreciation, he has not withdrawn any of his income from taxation, and on a sale of the property affected the depreciation will not be considered. [The rule here approved was written into the statute by sec. 2, ch. 539, Laws of 1927.]

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

Upon the relation of *Henry Laycock, certiorari* issued out of the circuit court for Eau Claire county to *John H. Nygaard,* as county clerk of Eau Claire county and clerk of the county income tax board of review of Eau Claire county, to review the proceedings of the county income tax board of review affirming an income tax assessment made against said *Henry Laycock.* The circuit court set aside the assessment, from which judgment the said defendant *Nygaard,* in his official capacity, brings this appeal.

For the appellant there were briefs by the *Attorney General, T. L. McIntosh,* assistant attorney general, *Victor M. Stolts,* district attorney of Eau Claire county, attorneys, and *George D. Spohn* of Madison, of counsel, and oral argument by *Mr. McIntosh.*

For the respondent there were briefs by *Bundy, Beach & Holland* of Eau Claire, and oral argument by *C. T. Bundy.*

The following opinion was filed January 10, 1928:

OWEN, J. The income upon which the tax in question was assessed grew out of the sale of certain real estate, part of which was owned by the relator, *Henry Laycock,* on January 1, 1911, and part of which was acquired by him since said date. In arriving at the amount of profit realized by said *Laycock* upon the sale of said property, the county income tax board of review first found the value of the property owned by the relator on January 1, 1911, as of that date, and the actual purchase price of the property which he acquired subsequent to that date. They depreciated these

values in the sum of $5,000. They then subtracted this depreciated amount from the selling price and fixed the difference as the profit realized by the relator upon the sale of the land subject to an income tax. The circuit court held that the board of review unlawfully deducted the amount of the depreciation, and held that the assessable income should have been determined by adding the value of the real estate as of January 1, 1911, to the purchase price of that portion thereof acquired subsequent thereto, and subtracting this sum from the amount realized by the relator upon the sale thereof.

The sole question presented is whether, in determining profits for the purpose of income tax assessment upon the sale of real estate, depreciation is to be deducted from the purchase price thereof. As an abstract proposition, the amount of income arising from such transaction is the difference between the buying and the selling price. But this does not necessarily indicate the taxable income for income taxation purposes. An amendment to the constitution authorized the legislature to impose a tax on income. The income tax law as a whole is the result of the exercise of that power on the part of the legislature. In arriving at a solution of the question thus presented we must consider not only isolated and detailed provisions of the law, but we must have in mind the object, purpose, and scope of the law. It seems plain from the law as a whole that the legislature intended to exercise the power thus conferred upon it in its entirety and to impose a tax in a just and uniform manner upon all income except that specifically exempted. Various rules are laid down by which the amount of income subject to the tax in any given year may be ascertained. Certain deductions and exemptions are specified, and among the deductions permitted is "The ordinary and necessary expenses actually paid within the year in carrying on the profession, occupation or business from which the income is derived,

State ex rel. Laycock v. Nygaard, 195 Wis. 192.

including a reasonable allowance for depreciation by use, wear and tear of the property from which the income is derived." Sec. 71.04, Stats.

Respondent contends that the deduction allowed for depreciation is allowed as an expense of doing business, and that an expense cannot be converted into a profit.

We must assume that in framing the law the legislature had in mind settled business principles, and accommodated the law to such settled principles with a view of reaching just results. It is thoroughly understood that in order to arrive at true profits arising from the operation of a business, the item of depreciation of property devoted to that business cannot be ignored. This is not an arbitrary rule of accounting, and the idea did not originate with the accountants. The accountants have devised their systems with a view of correctly reflecting the financial condition of a given business, and in taking note of depreciation they have but made their accounting systems conform to generally recognized business principles. Depreciation, therefore, is an item that must be deducted from gross income in order to arrive at the true income in any given year. Consequently the legislature provided for the deduction of a reasonable allowance for depreciation in the value of property devoted to business. But what becomes of these amounts allowed for depreciation? This may be illustrated by supposing, for instance, that a manufacturing corporation invests $100,000 in a machine, the useful life of which is twenty years. At the outset the machine represents $100,000 of the corporation's capital. At the end of one year, however, it does not represent that amount of capital, because its useful life remaining is only nineteen years. It is not worth as much as a machine the useful life of which is twenty years. Its value, therefore, is depreciated in the proportion which its remaining life bears to its original life, or five per cent. The capital of the corporation is impaired in the sum of $5,000.

According to good business practice, the company sets up a depreciation fund and transfers to that fund from its earnings the sum of $5,000, which keeps its capital intact. At the end of ten years the machine will represent $50,000 of its capital, and there will be in its depreciation fund the sum of $50,000. The sum of these two items represents the original investment in the machine. It should be borne in mind, however, that the company now has invested in the machine but $50,000. If it sells that machine for $75,000 its capital account has been increased in the sum of $25,000. There is a profit of $25,000 realized at the time of sale and should be included in its income tax report for that year.

If the original price of the machine is to be still figured at $100,000, the sale thereof would represent a loss of $25,000 occurring within the year in which the sale is made, and, under the statutes, may be deducted as a loss from the income of that year. Such a practice would not only exempt all income carried to the depreciation account during the years but $25,000 in addition. The statute intended no such result. It did not intend to tax income used to repair capital, but it did not intend to exempt profits which increased capital and of which the business secured beneficial use and enjoyment. The gain thus arising does not, as counsel for defendant claims, exist only in the fanciful imagination of the taxing officers. It is a true and real gain. It is the difference between the selling price and the amount of capital represented in the property sold. By permitting an annual deduction for depreciation, the taxpayer pays a tax only upon his actual income for that year. He pays no tax upon that part of his income transferred to capital account for the purpose of keeping capital intact. When he sells a portion of capital assets, however, at a profit, determined in the manner above indicated, he has made a profit, he has been enriched, and he should pay an income tax upon the amount by which he has been enriched by the transaction. That in

State ex rel. Laycock v. Nygaard, 195 Wis. 192.

truth and in fact represents "profits derived from the transaction of business or from the sale of real estate or other capital assets." It perhaps should be remarked that the statute does not provide that the profit arising from a sale of property shall be computed by taking the market value as of January 1, 1911, or the purchase price from the selling price. It provides that the market value as of January 1, 1911, or the purchase price, shall be "the *basis* for determining the amount of such gain or loss." Sec. 71.02 (2) (d), Stats. The method here approved does take such value or such purchase price as the *basis* for such determination, and does no violence to either express or implied commands of the statute.

This conclusion finds unreserved support in *U. S. v. Ludy,* 47 Sup. Ct. 608. That case seems to hold, however, that the property should be depreciated not only by the amounts *actually deducted* during prior years for depreciation, but for such amounts as proof may show *might have been deducted,* or which the taxpayer was entitled to deduct.

The principle we are discussing should be so applied as to work justice to the taxpayer as well as to the state. The taxpayer should pay upon his actual income. If he makes no deductions for depreciation he has not withdrawn any of his income from taxation, and he should not be made to pay another tax. In this case the relator in his income tax returns claimed no deductions for depreciation of this property except for one year, 1918, when he claimed and was allowed the sum of $550. In that year, however, he had no taxable income. In no event should more than $550 be deducted from the original value of the real estate, and in view of the fact that the deduction in 1918 made no difference with the amount of his income tax, we hold that even that amount should not be deducted. We may remark that our discussion here is somewhat moot, in view of the fact that the legislature, by sec. 2, ch. 539, Laws of 1927, has specif-

ically written into the statute the rule which we here approve. It results that the judgment should be affirmed, although our reasons therefor do not coincide with the views expressed by the trial court.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J., dissents.

A motion for a rehearing was denied, without costs, on March 6, 1928.