In the Interest of Mark Anthony NESLER, a Minor, by Daphne S. Nesler (Kitley), Mother and Next Friend, Appellant,

v.

William A. NESLER, Appellee.

No. 54459.

Supreme Court of Iowa.

April 9, 1971.

David A. Opheim of Kersten & Opheim, Fort Dodge, for appellant.

Arthur H. Johnson, of Johnson, Burnquist & Erb, Fort Dodge, for appellee.

REES, Justice.

Daphne Nesler Kitley, to whom in the interest of clarity we will refer here as plaintiff, instituted an action for habeas corpus in the district court of Webster County, Iowa, seeking to obtain custody of her son, Mark Anthony Nesler, who was residing with his father, the divorced spouse of the plaintiff, at Moorland, Iowa. The defendant father of the child filed answer and cross-petition seeking to modify a California divorce decree which gave custody of the child to the plaintiff. Subsequently, the plaintiff filed a petition in the same case praying for the entry of judgment for back child support. The trial court found there was a change of circumstances since the date of the California decree and it was in the best interests of the child that he remain with the defendant, his father, and that it would be disruptive to the child to change homes, and in the decree granted plaintiff judgment for $1000 in back child support. From such findings and decree, plaintiff appeals. We affirm the trial court.

Mark Anthony Nesler is the only child of the marriage of the plaintiff and defendant, which marriage terminated by divorce in 1960. Mark was born September 4, 1958. This had been the second marriage for both the plaintiff and defendant, and each had children by the prior marriages. Plaintiff was awarded the custody of Mark and child support in the amount of $50 per month. Following the divorce, the defendant moved to Moorland, and in 1963 married his present wife, Merna. In July, 1968 the plaintiff married her present husband, Ralph Kitley, it being plaintiff's third marriage and his fourth. They reside in Oakland, California. Mr. Kitley is employed as an insurance broker in San Francisco.

Following the divorce, the defendant made infrequent visits to California and generally arranged to visit his son. In 1964, becoming concerned about the boy's welfare, he considered instituting an action to secure custody of the boy but was unable to finance the litigation in connection therewith. Early in 1966 the plaintiff contacted defendant and asked him to take Mark for a time due to the fact that she was having difficulty controlling him. The boy was at that time emotionally disturbed, nervous and excitable, and tranquilizers had been prescribed for him. The plaintiff testified when she made arrangements for her son to come to Iowa to live with his father she intended it to be a temporary arrangement and that she expected him to be returned at the end of the summer in 1966. However, at summer's end she had not secured employment and asked the defendant to keep Mark with him for a longer period.

It seems to have been established defendant did not make regular payments for the support of his son, although the trial court found that about three fourths of the payments required to be paid were in fact made by the defendant. The irregularity and paucity of payments the plaintiff contends made it impossible for her to properly provide for Mark. The lack of contribution on the part of the defendant for the boy's support, she contends, compounded her difficulties in raising the boy.

The trial court reviewed the evidence concerning the home settings of the plaintiff and her present husband, and the defendant and his present wife, and found the economic circumstances and present conditions in the two homes were not remarkably dissimilar.

We are not faced here with the problem which so often confronts us by having to make a determination in a case where a child is spirited away from the custody of one parent or the other by ruse, trickery or subterfuge. The boy came to his father's home by agreement between the parties. He seems to have made a very satisfactory adjustment and is now characterized by the witnesses who testified and who had had opportunity to observe him, as a normal, happy, busy, contented and creative boy.

 I. As this is a habeas corpus action involving custody of a child, our review is de novo, and we give weight to the findings of the trial court but are not bound by them. Halstead v. Halstead, 259 Iowa 526, 531, 144 N.W.2d 861, 864; Childers v. Childers, 257 Iowa 1132, 1137–1138, 136 N.W.2d 268, 272.

Rule 344(f) (15), Rules of Civil Procedure, provides, "In child custody cases the first and governing consideration of the courts must be the best interest of the child." This court has adhered to that maxim without practical exception. Further, we have taken the position with relative consistency that it is highly desirable the status of a child be fixed as quickly as possible and be little disturbed thereafter, and then only for the most cogent reasons. Halstead v. Halstead, *supra*.

II. As we have observed above, we give weight to the findings of the trial court, especially in child custody cases, but are not bound by them. Rule 344(f) (7) R.C.P.

Mark Nesler had suffered one traumatic change of environment and has now, as observed by the trial court, been stabilized in a new one, and we are reluctant, as was the trial court, to again uproot him. Betzel v. Betzel (Iowa), 163 N.W.2d 551, 556; Jensen v. Sorenson, 211 Iowa 354, 364–365, 233 N.W. 717, 722 and cases therein cited.

III. We are cognizant of the fact that the decree of the trial court is at variance with the custody provisions of the California decree awarding custody to the plaintiff, but we note the trial court afforded full faith and credit to the California decree, and was not precluded from determining custody at variance therewith in view of changed circumstances. See Helton v. Crawley, 241 Iowa 296, 41 N.W.2d 60.

IV. The provisions of the trial court's decree providing plaintiff shall be entitled to visitation with Mark at reasonable times and places, but that she may not without prior approval of the court remove the child from Webster County seems to us to be reasonable. Kouris v. Lund, 257 Iowa 1267, 1274, 136 N.W.2d 502. Other propositions relied upon for reversal are found to be without merit.

On the whole record, we find no reversible error, and affirm the trial court.

Affirmed.

All Justices concur.